TOMB, *qui tam*, &c. *against* SHERWOOD.

THIS was an action of debt brought against the defendant on the 8th section of the act " *to prevent and punish champerty and maintenance,*" (1 *N. R. L.* 172.,) for buying the pretended right, or title, of one *Mooney*, to the south half of lot No. 50, in the late *Oneida* reservation, in *Sullivan*, in the county of *Madison*. The cause was tried before Mr. J. *Van Ness*, at the *Madison* circuit, in *July*, 1815.

A certificate of sale, dated the 7th of *August*, 1806, was issued by the *surveyor-general* of the state to *Mooney*, which stated that he had purchased a piece of land in the town of *Sullivan*, distinguished as lot number *fifty*, in the northwesterly part of the late *Oneida reservation*, containing 231 acres; on which lot 125 dollars were paid, the sum of 875 dollars remaining due. This certificate *Mooney*, for the consideration of 50 dollars, assigned to the defendant, in fee, on the 17th of *April*, 1814. The south half of the said lot was levied upon and sold, under a judgment and execution against *Mooney*, to one *Job Williams*, and the deed from the sheriff was dated the 5th of *November*, 1807. *Williams* permitted *Mooney* to remain in possession after the sale, for about one year, on his promising to surrender the possession to *Williams*, and deliver him the certificate. He delivered the possession, but retained the certificate. On the 4th of *September*, 1810, *Williams* conveyed to one *Foot*, in fee, and *Foot* conveyed to the plaintiff, and *Samuel*, his son, by deed, which was not dated, but which was proved to have been delivered in the fall of 1813. After the plaintiff's purchase, the defendant, by threats to dispossess the plaintiff, obtained from him a judgment bond for 200 dollars, as a consideration for relinquishing the certificate to him, and the like sum from one *Peck*, the owner of the north half of the lot. It was proved that the defendant, at the time he took the assignment from *Mooney*, was fully aware of the nature of his title. There were about 20 acres of the land in question improved. The house and improved land were worth 400 dollars; the value of the south half of the lot was 1,000 dollars.

Where a person undertakes to sell land which is held adversely to him it is immaterial whether his title or claim were good or bad, and the parties to such sale will be equally within the statute against champerty and maintenance.

So, where a person obtained a certificate from the surveyor-general of the state. that he purchased a lot of land, and the land was then sold under an execution against him, and he, afterwards, assigned the certificate; it was held that the assignee was liable to the penalty of the statute.

And the value to be recovered is not only that of the land actually occupied and cultivated, but of the whole lot of which it is parcel, and which is claimed in connection with it.

NEWYORK,
May, 1816.

TOMB
v.
SHERWOOD.

The jury found a verdict for the plaintiff, subject to the opinion of the court as to his right to recover, and as to the amount of the recovery—whether the verdict should be for 400 or 1,000 dollars.

*Storrs*, for the plaintiff, contended, that the purchase made by the defendant was of a pretended right or title, within the statute. The act of the 6th of *April*, 1803,* required the surveyor-general to give to each purchaser a certificate, containing a description of the land purchased, and the price; on the production of which, with an endorsement of the payment of the purchase money, he was entitled to a patent. This is a " promise, grant, or covenant, to have a right or title," which the act to prevent champerty and maintenance,† prohibits any person out of possession from buying or selling. It is not necessary that it should be a fee. The statute extends to any right or title.‡ A lease by a person having a mere covenant for a conveyance, is within the act.§

*Randall*, contra, contended, that if the defendant had been guilty of any offence, it was against the first section of the act against maintenance. The certificate of the surveyor-general was a mere *chose in action*, and the purchase of it was not buying any right or title. It conveys nothing. It is a mere engagement that, on the performance of certain things, the person shall be entitled to demand a patent. The commissioners of the land office alone could give any title; and by the 9th section of the act, if the purchaser failed in completing the payments, all previous sums paid are forfeited, and the land may again be sold. A bond, or covenant, for a conveyance, does not give a right of entry on the land.‖ In *England*, there are no cases in which the action has been sustained, unless where the purchase has been such as, *prima facie*, conveyed the title. The certificate was not under seal, and could convey no title. Every right includes a title.** Here was a mere assignment of the certificate.

Again, as to the amount of the recovery. The plaintiff was proved to be in possession of about 20 acres of improved land. The residue was vacant. The defendant could be liable only for lands he knew to be in the possession of another, or for such land as was improved; not for vacant land, or such as was in.

* Sess. 26. ch.
106. s. 7. vol. 3.
*Laws*, 365. *Webster's* ed.

† 1 *N. R. L.*
172 sess. 24. ch.
27. s. 8.

‡ 2 *Hawk. P. C.*
420. b. 1. ch. 86.
s. 12. 4 *Co.* 26.
*Co. Litt.* 369.
§ 15 *Vin Ab.*
149. *Maint.* (B.)
pl. 7. p. 157. (E.)
pl. 25.

‖ 9 *Johns. Rep.*
35. 331.

** *Co. Litt.*
315. b.

the constructive possession of the plaintiff. The conveyance <span>NEWYORK,</span>
of a title to land held adversely, is void only as to the land pos- <span>May, 1816.</span>
sessed adversely, and is good as to the residue; and the defend- <span>TOMB</span>
ant, in an action on the statute for buying a pretended title, is <span>v.</span> <span>SHERWOOD.</span>
answerable for no more than the value of the land in actual pos-
session.*

<span>* 1 Johns. Rep. 346. 5 Johns. Rep. 500, 501. 7 Johns. Rep. 281.</span>

*Storrs*, in reply, said, that, by " title," was not meant a fee.
It is the means by which the party is to acquire the possession.
It includes any right or interest whatever. Possession of a
part, with a claim to the whole of a tract of land, is a sufficient
adverse possession of the whole.†

<span>† 1 Caines' Rep 84. 358.</span>

VAN NESS, J. The plaintiff was in possession of the land,
under a deed in fee given upon a valuable consideration, occu-
pying and improving it as his own; and while he was thus in
possession, and, which is equally important, while *Mooney* was
out of possession, the defendant purchased the equitable inter-
est claimed by *Mooney* under the surveyor-general's certificate.
It is material to observe, that, long before the defendant's pur-
chase, *Mooney* voluntarily surrendered the possession of the land
to *Williams*, under whom the plaintiff claims, after having been
*Williams's* tenant for a year. Two questions arise upon the
merits of this case. 1st. Whether the purchase by the defend-
ant was of a pretended right or title within the statute; and, 2nd.
If it is, what shall be the amount of the recovery, 400 dollars,
or 1,000 dollars?

1st. The words of the statute are, that no person shall buy
or sell *any pretended right or title*, or make, or take, any promise,
grant, or covenant, to have *any right or title* of any person to
any lands, &c. Under this statute, it is well settled that it is im-
material whether the right or title purchased, or sold, be good or
bad; for if it be ever so good, if the vendor is not in possession,
nothing passes by the deed, and the case comes within the
statute. It has also been held, that the sale of a copyhold estate,
or giving a lease for years, when the vendor or lessor is not in
possession, is within the statute. Lord *Coke* says, " the words of
the statute be, *any pretended right*, and, therefore, a lease for years
is within the statute; for the statute saith not *the right*, but *any
right*, and the offender shall forfeit the whole value of the land."
And again: " Also the statute speaks of *any* right or title to any

land. A customary right, or a pretence thereof to lands holden by copy, is within this statute." (*Co. Litt.* 369. a. and b.) The statute intended to prohibit the sale of pretended rights, by which the possession of another might be disturbed. And it appears to me that a purchase like the present is fully within the meaning and spirit, as it indisputably is within the words of the act. The defendant, by getting possession of the surveyor-general's certificate, and the assignment of it by *Mooney*, had it in his power, perhaps, to defeat the plaintiff's right, or, at all events, to give him great trouble and vexation in perfecting his title. It was a dormant and abandoned claim of *Mooney*, which the defendant bought for the express purpose of harassing the plaintiff, and to disturb his right and possession. The case shows, that by virtue of this very purchase the defendant extorted a considerable sum of money from the plaintiff, by threatening to dispossess him.

2d. We have more than once decided that when a person entered, and was in possession, under an agreement to purchase an entire lot or piece of land, and cultivated and improved a part, claiming the whole as his own, that he was to be deemed to be in the actual possession of the whole, and that a deed given by a stranger, though he had a good title, was inoperative. The assignment in this case is of the whole lot described in the surveyor-general's certificate, and there is no pretence for saying that *Mooney* was in possession of any part of it. He had, in fact, actually surrendered the possession to *Williams*, long before the defendant purchased from him his pretended right. The defendant was fully apprised of the actual situation of the lot, and bought it with full knowledge of the plaintiff's rights. I do not see, therefore, upon what ground it can be contended that the defendant is not liable for the value of the entire lot, if he is liable at all. I am of opinion, therefore, that the plaintiff is entitled to judgment for 1,000 dollars, being the value of the whole lot, as found by the jury.

Thompson, Ch. J., and Yates, J., were of the same opinion.

Spencer, J., dissented, observing, that the case presented facts establishing a fraud, rather than an offence against the statute. It is conceded, that be the title ever so valid, if the lands be held adversely to that title, it would be champerty to pur-

chase such valid title; but if the title purchased be valid, and the land is held under, or subservient to, that title, it would not be champerty. It is held not to be sufficient to show that the seller had not been in possession a year before, without averring that he had a pretended right or title, because that is the point of the action. (2 *Hawk.* b. 1. ch. 86. s. 10.)

The intent of the statute was to prevent any person, having a disputed title, from conveying it to strangers. (*Bac. Abr. Maintenance,* E.)

Here we are warranted in saying, that the plaintiff knew that the lands had been taken up by *Mooney,* under the surveyor-general's certificate, and that it was sold under the *fi. fa.* against *Mooney,* in subserviency to that right; and we must say, that the plaintiff acquired, by his purchase, the bare right of possession, subject to the right of the state. This is, then, not a case within the purview of the statute; the right of the state was not a pretended right; for the plaintiff held under the state without any title, and not having acquired by his purchase a right to grant.

Again, the defendant taking an assignment of the surveyor-general's certificate was not taking a *promise, grant, or covenant to have any right or title;* the operation of law might be, that he would obtain a grant by the production of the certificate and the payment of the price of the land, yet it was not in itself a *promise, grant, or covenant,* that he should have the land. This is a penal statute, and to bring the defendant within it, he must be brought within the very terms. I cannot view the case as within either branch of the statute, and, therefore, think the defendant is entitled to judgment.

PLATT, J., was of the same opinion.

Judgment for the plaintiff.